M. A. SMITH et als. v. ELIZABETH KRON et als.

*Evidence—Agency—Infants—Torts.*

1. Where a preliminary question of fact arises, upon which the admissibility of evidence depends, the finding of the Judge cannot be reviewed on appeal, if there be any evidence to warrant it.

2. Before the acts and declarations of an alleged agent made and done in the absence of the defendant, the alleged principal, can be received in evidence, the trial Judge must find as a fact, that *prima facie* evidence of the agency has been offered, and his ruling upon this question of fact is beyond the reviewing power of the appellate Court.

3. An infant is liable both civilly and criminally for his torts, and in an action for damages, it is immaterial that the tort was committed by the direction of one having authority over the infant.

4. While infants are incapable of making a contract with an agent either express or implied, so as to bind them for his torts committed in pursuance of the agency; *it seems*, that an infant is liable for torts committed by his agent in the necessary prosecution of the business of the agency, under the maxim, *qui facit per alium, facit per se.*

·(*Kron* v. *Cagle*, 1 Wins., 118; *Monroe* v. *Stutts*, 9 Ired., 49; *State* v. *Andrew*, Phil., 205; *State* v. *Davis*, 63 N. C., 578; *State* v. *Vann*, 82 N. C., 631; *State* v. *Sanders*, 84 N. C., 728; *State* v. *Efler*, 85 N. C., 585; *State* v. *Burgwyn*, 87 N. C., 572; *Ellison* v. *Rix*. 85 N. C., 77; *State* v. *Jackson*, 82 N. C., 565; *State* v. *Secrest*, 80 N. C., 450; *State* v. *Edwards*, 79 N. C., 648; *State* v. *Norton*, 1 Wins., 296; cited and approved).

CIVIL ACTION, tried before *Avery, Judge,* and a jury, at May Term, 1886, of UNION Superior Court.

This action, begun on March 6th, 1879, by the plaintiff Melissa Smith, as administratrix of Jane P. Doty, and with leave of the Court, prosecuted *in forma pauperis,* is prosecuted for the recovery of damages for trespasses committed by the defendants, F. J. Kron, Adelaide Kron and Elizabeth Kron, in the life-time of the intestate, upon a tract of land whereof it is alleged that she, as a tenant in common, was the owner of one fourth part, in mining gold thereon and converting it to their own use.

At Spring Term, 1881, leave was given to make Cordelia Weisenger a party plaintiff, and at Fall Term, 1882, the original plaintiff also became such in her capacity as administratrix of Caroline Adkins.

At Spring Term, 1884, the death of the defendant F. J. Kron being suggested, the action was allowed to abate as to him; and at the second term thereafter, by consent, it was ordered that a copy of the record of the action be removed for trial to the county of Union, in the Superior Court of which, at Spring Term, 1886, it was tried.

The complaint and answer put in evidence the title to the land, and the commission of the alleged trespasses, besides which the defendants set up as a bar to the suit the lapse of time since the acts complained of were done. The mining for gold and its removal were operations carried on between the years 1843 and 1849, under the direction and control of the deceased defendant, F. J. Kron, the father of the surviving defendants, and for whom the plaintiffs allege he was then exercising an agency. The defendant Adelaide, in giving her testimony, stated that she was born in 1828, and is older than her sister Elizabeth.

The stress in the plaintiff's case, as shown on the trial, lies in offered proof of agency in the father, so as to affect his daughters by what he said and did. That proof, with a view of letting in the acts and declarations of the alleged agent, was in substance this: A witness who, in 1843, worked on the land for gold under F. J. Kron, and paid him toll but never paid any to the defendants, once went to the house to weigh and divide the gold, and this was done in the defendant's presence.

Another witness who worked under the deceased in mining during 1847 and 1848, testified that he and his daughters on one occasion came upon the premises, and the former said to the witness in their hearing, "you are about the line; I brought my daughters with me to show them their line." He then went off with them, had some conversation in French, and returning added, "what is below the stump belongs to us; what is above belongs to some one else."

To another witness who had worked on the land for the deceased in the years 1847, 1848 and 1849, the deceased said that he had brought his daughters to show them their line and to divide the gold. The gold was divided in the shop, the defendants being outside, and there were cracks in the walls of the house. The parties then all went off together.

The plaintiff then introduced as a witness Adelaide Kron,

one of the defendants, who testified that she was the daughter of Dr. F. J. Kron, and knew the land in dispute by reputation; that she thinks she was on the land once with her father; that she does not recollect seeing the witness Reynolds, Beamon or Morris; she cannot tell whether Dr. Kron ever had the land worked or not; that Dr. Kron saw to everything for witness and her sister Elizabeth; and the land was said to belong to witness and her sister, but they did not set up claim to anything then; witness does not know whether Dr. Kron claimed it for them or not, nor how he claimed it, if at all. As it was said to belong to witness and her sister, witness reckons that Dr. Kron claimed it for her and her sister; that stands to reason. Witness does not know whether he got gold from that land or not; witness was there on a certain Sunday, and reckons that Dr. Kron attended to this land for her and her sister.

Upon cross-examination, the witness stated that she was never before examined as a witness in Court; that she was never on the land with her father except on a Sunday in the year 1845; that she was born in 1828, and is older than her sister Elizabeth; that at the time she went on the land with her father she was only 17 years old; that she did not take charge of any thing; that witness's father took charge of witness's business, but witness never authorized him to attend to any business for her; that witness never did know where the gold spoken of came from; that they had other gold mines that were worked.

Upon this evidence as showing a *prima facie* case of agency, the plaintiffs proposed to show declarations of the alleged agent made within the scope of the assumed authority, and in the absence of the defendants. The proof was, upon objection, ruled out, the Court being of opinion and so deciding, that a case of *prima facie* agency had not been established, so as to let in proof of the declarations of the deceased to bind the defendants; and further, that the de-

fendants being infants at the time, were not answerable for the torts of their alleged agent. Whereupon the plaintiffs suffered a nonsuit, and appealed.

*Messrs. Platt D. Walker* and *D. A. Covington,* for the plaintiffs.
*Messrs. W. P. Bynum* and *J. J. Vann,* for the defendants.

SMITH, C. J., (after stating the facts). The ruling disposes of the exception first taken to the refusal of the Court to permit proofs of the declarations of the deceased, " that he was holding and leasing the land by the authority of and as agent of the defendants," and equally incompetent was the case made out in the appeal in the case of *Doe on the demise of Adelaide and Elizabeth Kron* (the present defendants) v. *Benjamin Cagle,* reported in 1 Winston, 118.

The ruling of the Court upon the insufficiency of the evidence to show a *prima facie* agency, so as to let in proof of the acts and declarations of the alleged agent to the jury, a preliminary enquiry to be determined by the Judge, *Monroe* v. *Stutts,* 9 Ired., 49, and numerous other cases referred to under it in Tourgee's Digest of Cited Cases, is *upon a question of fact,* not of law, and is beyond the reviewing power of the appellate Court. Facts upon which the admissibility of evidence offered depends, must be ascertained and found by the Court, and the conclusions of the Judge, *if there be evidence,* stand upon the same footing as the finding of the jury upon issues of fact.

Thus the Court must determine whether confessions have proceeded from undue influence operating on the mind of the accused so as to induce him to make them, and the determination is conclusive, while what amounts to such influence is a matter of law; *State* v. *Andrew,* Phil., 205. The former is not reviewable; *State* v. *Davis,* 63 N. C., 578 ; *State* v. *Vann,* 82 N. C., 631 ; *State* v. *Sanders,* 84 N. C., 728 ; *State* v. *Eler,* 85 N. C., 585; *State* v. *Burgwyn,* 87 N. C., 572.

So is the sufficiency of the proof of a lost writing to let in secondary evidence of its contents; *Ellison* v. *Rix*, 85 N. C., 77.

The Court must decide, as in case of agency, if the proofs of a conspiracy are *prima facie*, so as to admit the declarations of one in pursuit of the common object against the others; *State* v. *Jackson*, 82 N. C., 565.

Upon the qualifications of an expert to give an opinion; *State* v. *Secrest*, 80 N. C., 450.

Upon the mental capacity of a child of tender years to give testimony; *State* v. *Edwards*, 79 N. C., 648.

Upon the presence of negro blood in the defendant under the former law, so as to render a witness possessing the same blood competent to testify in the case; *State* v. *Norton*, 1 Wins., 296.

These cases serve as illustrations of the proposition, that the finding of a preliminary fact, necessary to the admission of testimony, made by the Judge, is conclusive upon this Court.

The next exception, not necessary to be decided in disposing of the appeal, in view of the absence of any evidence to sustain it, is to the ruling that infants, not being able to make binding contracts, except for necessaries in a proper case, are incapable of forming such a relation with an agent as to render them liable for his torts, done in prosecuting the objects of the alleged agency. This is what we understand the ruling to be, and we give it our unqualified assent. Unquestionably an infant is responsible for his own torts civilly, and, when they constitute a crime or misdemeanor, criminally also; and this, when committed by direction of one having authority over him, so far at least as affects his responsibility in an action for damages. Cooley on Torts, 103 and following; 1 Ch. Pl., 76, 80; *Robbins* v. *Mount*, 4 Robt. (N. Y.), 553.

If the instruction goes beyond the liability growing out of and inseparable from the relation of principal and agent, formed by contract positive or implied, and protects the infant of sufficient intelligence and judgment from account-ability for torts, involved and done in the necessary prosecu-tion of the business of the agency and the attainment of its ends, we are not prepared to concur in its correctness in law. We do not see why the rule in such case, *qui facit per alium, facit per se,* does not apply. But, however this may be, the instruction was irrelevant and not hurtful to the appellants, for there was no evidence presenting a state of facts to which it was applicable. There is no error.

No error.                                        Affirmed.