## C. A. SCHRANDT ET AL. V. W. E. YOUNG.

FILED JUNE 19, 1901. No. 9,585.

Commissioner's opinion, Department No. 2.

1. **Replevin Damages:** UNDER A GENERAL DENIAL DEFENDANT MAY PROVE AND RECOVER. A defendant in replevin under a general denial may prove and recover any items of damage properly allowable to him in such an action.

2. **Answer:** AFFIRMATIVE DEFENSES WITH GENERAL DENIAL: REMEDY, MOTION TO STRIKE, NOT TO REQUIRE SEPARATE STATEMENT. Where such defendant, in addition to a general denial, sets up in his answer a further paragraph containing a number of affirmative grounds of defense, the proper remedy of the plaintiff is by motion to strike out; and hence a motion to require the several defenses to be separately stated and numbered is properly overruled.

3. **Replevin Damages Must Be Incident to Contest.** The damages recovered in replevin must be connected with and incident to the contest over possession of the property.

4. **Withholding Property:** DAMAGES CAN NOT INCLUDE ANTICIPATED PROFITS. The damages for withholding the property which a defendant in replevin may recover under section 191a of the Code do not include damages for anticipated future profits under a contract by which he held the property in controversy, nor for failure to comply with subsequent oral modifications thereof, nor for misrepresentations inducing him to enter into the contract.

5. **Replevin:** MEASURE OF DAMAGES: INTEREST: USE OF PROPERTY. Interest is the ordinary measure of damages of the defendant

in replevin; but where the use of the property has a value which exceeds the interest, he may recover such value, and his right so to do does not depend upon return of the property.

6. ———: DAMAGES: RULE RESTRICTED. The rule announced in *Romberg v. Hughes*, 18 Nebr., 579, that damages for detention may only be had where there is a return of the property, should be restricted to damages for deterioration or depreciation after the taking.

7. **Transcript:** PRESUMPTION FROM CERTIFICATE OF CLERK: NATURE OF AMENDMENT: CERTIFICATE OF CLERK: SUGGESTION OF DIMINUTION. Where the record shows that pleadings were amended at the trial, but the nature of the amendment does not appear, the clerk's certificate that the transcript is full and complete creates a presumption that the pleadings as set forth contain the amendment. If such is not the fact, the party desiring to avail himself of the portion omitted should suggest diminution and procure a. complete transcript.

8. **Verdict:** AGISTER'S LIEN. A verdict in replevin finding a special ownership in the defendant and fixing its value is sustained by evidence of an agister's lien for the sum so fixed.

9. **Agister's Lien.** One who receives a flock of sheep for care and pasturage, under an agreement whereby he is to receive a share of the wool and of the increase as his compensation, is within the purview of section 28, article 1, chapter 4, Compiled Statutes, creating an agister's lien for the "contract price."

10. **Provision in Contract Requiring Arbitration Will Not Be Enforced.** It is the settled law of this state that a provision in a contract requiring arbitration, whether of disputes arising under the contract generally or only of the amount of any loss or damages sustained by the parties thereto, will not be enforced; nor will refusal to arbitrate be available in an action growing out of the contract.

11. **Tender.** A tender, in order to be effectual, must be absolute and unconditional.

12. **Immaterial Testimony:** ADMISSION CURED BY INSTRUCTION. Where testimony as to immaterial matters is closely connected with, and not easily separated from, that of the same witness going to material and important issues, any error in admitting such testimony is cured by an instruction which clearly and explicitly directs the jury to ignore it and properly defines the issue to be tried.

13. **Cross-Examination.** Questions calling for evidence tending to show the improbability of, or to throw doubt upon, statements made in the examination in chief are proper upon cross-examination, especially where such statements were in the nature of expert opinions.

14. **Error Without Prejudice.** Error in rejecting evidence upon an issue that was afterwards fully proved in another way is without prejudice.

15. **Party Estopped by His Own Request.** A party who requests a trial court to give instructions framed upon a certain theory can not be heard to complain that the court gave other instructions proceeding upon the same theory.

ERROR from the district court for Sheridan county. Tried below before WESTOVER, J. *Affirmed upon filing of remittitur.*

*Robert Lucas* and *Albert W. Crites,* for plaintiffs in error.

*W. W. Wood* and *Stewart & Munger, contra.*

POUND, C.

This is an action of replevin involving some 536 sheep taken by the plaintiffs from the possession of the defendant, who held them under a written contract of agistment whereby he was to receive one-half of the increase after making good all losses and one half of the wool-clip, by way of compensation. The contract was for a term of three years, but at the end of the first year the plaintiffs, claiming that the defendant had failed to comply with the terms of the contract as to care, feed and protection of the sheep, so that a number had been lost and the others damaged, demanded possession, and on refusal instituted this suit. Upon trial, the jury found the right of possession to be in the defendant, found that he had a special ownership and interest of the value of $239.80, and assessed his damages by reason of the detention of the property by the plaintiffs at $400. Judgment was rendered accordingly, and the plaintiffs prosecute error to review this judgment and the proceedings on which it is based.

The defendant, in his answer, after a general denial, set up in a further paragraph the written contract between the parties and a number of affirmative defenses based thereon, claimed a special interest or ownership by way of agister's lien for $292, the value of his agreed compensation up to

the time the sheep were taken, and damages in the sum of $450, for the taking and detention, being the probable profit which would have accrued to him under the contract had it not been broken by plaintiffs' replevying the sheep. The plaintiffs moved the court to require the defendant to separately state and number the several defenses set up in this second paragraph, and error is assigned in that the trial court overruled such motion. We do not think that this ruling was either prejudicial or erroneous. The matters set up in the second paragraph were mere surplusage, as the defendant might have proved every available defense therein pleaded and recovered every item of damage properly allowable to him for the detention of the property under his general denial. *School District v. Shoemaker,* 5 Nebr., 36. Obviously the more particular statement was not prejudicial. But counsel say there were matters pleaded which were not properly triable and damages claimed which were not recoverable, and that if separate statements had been required these might have been eliminated. Such course was not necessary. The whole of the second paragraph was superfluous and redundant. Plaintiffs' remedy was not by a motion for an order to separately state and number, but by motion to strike out. There was nothing to prevent their reaching any part or all of the paragraph in question without separate statements. *Aultman, Miller & Co. v. Stichler,* 21 Nebr., 72. A more serious question arises, however, upon the rulings on evidence, instructions, and verdict as to these damages. All of the assignments of error upon these points may be considered together, as they present the same questions, namely: what is included in the damages for detention recoverable by a successful defendant in replevin; whether he can recover more than interest on the value, or alternatively the value of use of the property, and deterioration or depreciation between the date of taking and the trial; and whether any distinction with respect to the recovery of the value of use of the property must be made, dependent upon return or failure to return.

This court has heretofore remarked that the measure of damage in actions of replevin "has been the occasion of much controversy and diversity of opinion." *Teel v. Miles,* 51 Nebr., 542. In the action of replevin originally no damages were recoverable by the defendant. The right to damages arises from the provisions of statutes, which differ considerably in the several states in essential particulars. Hence we must look primarily to the provisions of the statutes to ascertain the limits of such right. Section 191 of the Code of Civil Procedure says that when the jury find for the defendant they shall find whether he had the ownership or the right of possession only, and shall award him such damages as "they think right and proper," for which judgment shall be rendered. Section 191a provides that the judgment mentioned in the prior section shall be for the return of the property, or, if return can not be had, for the value or value of possession, "and for damages for withholding said property." In other words, the damages allowed are for the withholding or detention of the property, not all damages generally which may be connected with the subject in dispute or grow out of the relations of the several parties to each other or to the property. They must arise from, and be incident to, the contest over possession of the property; and unless they do so arise, are not recoverable merely because connected with the transaction by reason or virtue of which the plaintiff's alleged right of taking possession accrued. It is true that in *Schars v. Barnd,* 27 Nebr., 94, a plaintiff who replevied a stock of goods from a sheriff was allowed to recover damages resulting from the closing of his store under the levy. But this was as part of his damages for the withholding of the stock after levy and until retaken in replevin. During that time, as a result of the withholding of the stock, the store remained closed, and such damages represented the value of the use of the stock to the plaintiff during the time it was withheld, which obviously might be more than the probable net income during the days the sheriff was in charge. That decision does not extend the

statutory recovery of damages for the withholding or detention to other damages not connected with the detention of the property but depending upon the effect of the replevin proceedings upon collateral undertakings or obligations not immediately connected with the controversy over possession of the property. 'The replevin action is primarily to adjudicate the possession of the property: Other rights and claims must be determined, as a general rule, in other appropriate proceedings, even though closely connected with the controversy out of which the contest over possession arises. *Gillespie v. Brown*, 16 Nebr., 457. For the same reasons, damages not connected with the respective rights of the parties to possession, such as injury to other property occasioned by the removal of that in controversy, are not recoverable. *Dietrichs v. Lincoln & N. W. R. Co.*, 13 Nebr., 43, 47; *Jameson v. Kent*, 42 Nebr., 412.

What, then, is the measure of damage for detention? Ordinarily it is interest upon the value of the property. *Hooker v. Hammill*, 7 Nebr., 231; *Hainer v. Lee*, 12 Nebr., 452; *Dodge v. Runels*, 20 Nebr., 33. But where the use of the property is valuable, the value of the use may and often does considerably exceed the lawful rate of interest. In such case interest does not afford adequate compensation, and, accordingly, it is well settled that the value of the use, where use has a special value above and in excess of interest, is recoverable as damages for detention, and is the measure thereof, instead of interest." *Boston Loan Co. v. Myers*, 143 Mass., 446; *Williams v. Wood*, 61 Minn., 194, 63 N. W. Rep., 492; *Nash v. Larson*, 83 N. W. Rep. [Minn.], 451; *Burt v. Burt*, 41 Mich., 82; Shinn, Replevin, sec. 646. Another kind of damage which may properly be allowed to a defendant arises from change in the value or condition of the property while withheld from him. In this state the value of the property is fixed with reference to the time when it was taken under the writ. *Heidiman-Benoist Saddlery Co. v. Schott*, 59 Nebr., 20. If the property is injured or deteriorates in value after it is taken, a return does not

make the defendant whole, because he does not get it in the condition in which it was, and, in order to be fully restored to his former position, he ought to have the difference in value as damages. This is universally recognized, and such deterioration is considered a proper element of damage. *Hooker v. Hammill,* 7 Nebr., 231; Shinn, Replevin, sec. 648. But such damages are allowed upon the theory that the defendant is getting back the property in a damaged or deteriorated condition, or that it is less valuable than when taken from him. If the property is not returned, and the defendant recovers its value at the time it was taken instead, he is fully compensated, and should not be awarded in addition damages for deterioration, meant only to make up deficiencies in the property as returned. Hence it is held properly that damages for deterioration are only recoverable where the property is returned, and may not be had, along with the value at the time of taking, in case no return is made. A difficulty arises in this state, however, in view of prior decisions of this court, to the effect that damages for detention generally, and not merely those assessed to cover deterioration and depreciation, may not be recovered except where there is a return, and that where there is no return interest is the sole measure of damage. *Romberg v. Hughes,* 18 Nebr., 579; *Hale v. Wigton,* 20 Nebr., 83, 94; *Aultman, Miller & Co., v. Stichler,* 21 Nebr., 72, 79. In *Romberg v. Hughes, supra,* it is said: "It is only in cases where a return of the property is had that the party to whom the property is returned is entitled to damages for the detention. The rule allowing the value of the use is peculiar to replevin, and grows out of the fact that the party to whom the property is awarded seeks to recover the property itself, and not its value. In such case, when the property is returned, the party to whom the return is made is entitled to the damages awarded for the detention. If, however, a verdict is rendered for the value of the property, the action in that regard being one for damages only, the measure of damages is the value of the property as proved, together with law-

ful interest thereon from the date of the unlawful taking."
In considering the application of the rule here laid down
and the basis upon which it may rest, we must bear in mind
that a considerable diversity exists in various jurisdictions
both as to the time with reference to which value is to be
fixed and as to the course to be taken by the defendant in
claiming the property or merely its value. Such consider-
ations must not be overlooked when seeking for prece-
dents in other states. Where, as in some jurisdictions, the
defendant may or must elect whether to claim return or
to claim the value of the property so that the verdict may
run one way or the other exclusively, there may be ground
for saying that in the one case the proceeding is to recover
the property itself, in the other, if he elects differently,
the action, as to him, is for damages only. *Just v. Porter*,
64 Mich., 565, 31 N. W. Rep., 444; Shinn, Replevin, sec.
682, and note. With us, the election to return or to pay the
value is left practically to the plaintiff. The statute re-
quires an alternative judgment in every case where the de-
fendant recovers, and there is nothing in the statute to
make the recovery of damages for detention depend upon
return or failure to return. As has been seen, however,
there is sound reason for limiting the right to damages for
deterioration or depreciation to the event of a return of
the property. Unless the judgment conditions the recovery
of such damages upon return, it obviously works an in-
justice to the plaintiff, in case for some reason he can not
make return, and gives double compensation to the defend-
ant. To this extent, and to the extent that it precludes the
recovery of both interest and value of use, one being merely
a substitute for the other, in case the latter is uncertain or
not ascertainable, the rule announced in *Romberg v.
Hughes* is sound and salutary. But when the rule goes
further and makes the recovery of other damages for de-
tention depend upon the return of the property, it works
no less injustice to the defendant. If the value of the use
exceeds the interest, it is unjust that the defendant, who
was entitled to and deprived of the use, should be required

to take the interest only; and it is equally inequitable to allow the plaintiff, by merely paying the value of the property and the interest, to retain the difference between the interest and the value of the use of the property. Not only is the rule in *Romberg v. Hughes* one-sided, in so far as it goes beyond damages for depreciation or deterioration, but it would necessarily operate to prevent return of the property by making failure to return profitable. It has sometimes been laid down that such damages ought to be assessed as would insure return (Cobbey, Replevin, sec. 976), and, while damages ought to be assessed solely with a view to full and fair compensation, yet, if there is any policy in this connection, we think it should be in the direction of securing rather than preventing a return of the property. It is generally held that the defendant's right to recover damages for detention does not depend upon whether the property is or is not returned. "The return of the property only discharges the judgment for its 'value,' and does not affect the defendant's rights to damages for its detention." Shinn, Replevin, sec. 639; *Buckley v. Buckley,* 12 Nev., 423; *Haskins v. Everett,* 4 Sneed [Tenn.], 531; *Mayberry v. Cliffe,* 7 Cold. [Tenn.], 117. Except so far as it applies to damages for deterioration, the rule in *Romberg v. Hughes* is not required by, nor has it any support from, the statute or the authorities, and has been cited only to be received with doubt. *Minthon v. Lewis,* 78 Ia., 620, 43 N. W. Rep., 465. Nor is it sustained in a jurisdiction like ours, where the defendant is not required to elect whether to claim return or value, by the suggested analytical distinction between replevin and trover. The rule that a defendant who did not claim a return could not have damages was based on the older modes of pleading. Even then, however, he could have damages along with recovery of the value if he claimed the property. Wells, Replevin, secs. 522, 523. The object of the provision allowing the defendant damages for detention is to fully compensate him for the wrongful withholding of the property under the writ. The Code means that he shall be fully compensated when it

says that he shall have such damages as are right and proper, and, as has been said, he ought to recover "all damages which he has actually sustained by reason of the unlawful detention of the property in controversy." *Teel r. Miles,* 51 Nebr., 542. Value of the use of the property is a just and recognized element of such damages, and the right to it should not be made nugatory by limiting its recovery to the event of a return. Hence we think that *Romberg v. Hughes* should be limited, in its application, to damages for depreciation and deterioration, and that measure of the damages for detention recoverable by a defendant in replevin may be stated thus: He may recover, (1) if there is no special value attaching to use of the property, interest; (2) if the value of use of the property exceeds the interest, then such value, without regard to whether the property is returned, but, in such case, no interest; (3) if loss, deterioration or depreciation occur while the property is withheld, then the amount of such loss, damage or depreciation, to be conditioned, however, upon return of the property, the alternative judgment for the value being fixed as of the date of the taking. Moreover, the damages for detention must be such as grow out of the detention and are connected with or incident to the contest over possession. Judged by these standards, we do not think that the large judgment recovered by the defendant as damages for detention can be upheld. It was probably allowed by way of damages for future profits under the contract by which defendant held the sheep; but, as defendant's counsel admit, it may have been for this, for failure to replace certain old ewes with new ones, pursuant to an alleged oral arrangement, or for misrepresentations prior to the making of the contract. None of these grounds would justify assessment of damages for detention in an action of replevin. They are not damages for detention of the property at all. They arise out of collateral matters and are not incident to the dispute over possession. But we can not, for the reasons above stated, accede to the further contention of the plaintiffs that, since the record

shows that the property can not be returned, no damages for detention whatever are recoverable. Nothing is claimed by way of compensation for deterioration or loss, which alone would be affected by the impossibility of a return. The defendant must recover all his damages in this action. *Teel v. Miles,* 51 Nebr., 542. If interest is not a full compensation for such loss as he has suffered by reason of withholding of the property, he should not be restricted thereto. As but little time intervened between the taking and the trial, the damages under this head could not be large. Indeed, after a careful review of the testimony, we find no proof that during this time the use of the flock was of any ascertainable value to the defendant. At the same time, he ought not to be deprived of such damages, if any he can show, in case he elects to have a new trial. Otherwise, as the damages are assessed upon a wrong and inadmissible basis, in the absence of data from which to allow any special damages for detention to which he may be entitled, this court can only require a remittitur of all in excess of lawful interest from the date when the property was taken. Whether future profits reasonably to be anticipated under the contract might not be taken into consideration in determining the amount of defendant's interest by way of agister's lien, we need not consider, since the instructions and verdict do not proceed upon that idea, nor was the element in question considered or sought to be considered in that connection.

We have not overlooked in this connection an argument made on behalf of the defendant that since the record shows that by leave of court the answer was amended by interlineation at the trial, and the answer set forth in the record is merely stated to have been filed prior to the trial, there is no means of knowing what the amendments were, and they should be presumed to be sufficient to sustain the damages in question. The order allowing the interlineation does not specify its nature, but the clerk certifies that the transcript is full and complete and contains the answer of the defendant. This raises a presumption that it

contains the interlineation. *City of Topeka v. Dupree,* 8 Kan. App., 286, 55 Pac. Rep., 511. If it does not, defendant might and should have supplied the missing portions by suggestion of diminution. Moreover, due objection was made to the evidence, instructions and verdict with respect to these damages, and no additions or amendments which might have been made to the answer would have enabled the defendant to prove any items of damage which were not already provable under his general denial.

As the error in the assessment of damages is curable by remittitur, without a new trial, it becomes necessary to examine the other errors assigned. These relate to the form of the verdict, to rulings upon evidence, and to the charge of the court. The verdict finds the right of possession in the defendant, finds the value of the property, finds that the defendant has a special ownership and interest and the value thereof, and assesses damages for detention. The form is clearly unobjectionable, and the evidence showed an agister's lien for the agreed compensation under the contract, which is sufficient basis for the finding of special ownership. The repeated rulings of this court that proof of lien or special ownership will not support a finding of general ownership are not in point. True, the statute directs the jury to find whether the defendant has the right of property or the right of possession only. But as special property means right of possession coupled with a limited or qualified interest, the substance of the statutory requirement was complied with. Counsel contend, however, that an agister's lien existed only as to certain of the sheep subsequently delivered to be kept at an agreed price in money. The statute providing for an agister's lien does make use of the words "contract price," and the word "price" in ordinary parlance undoubtedly refers to money. But this is not controlling. Contracts like the one in question have always been considered agistment contracts equally with those where a money compensation was agreed on. *Bass v. Pierce,* 16 Barb. [N. Y.], 595. The reason of the law extends to all contracts of agistment,

whether for money or some other valuable consideration, and the words in the context, "procure, contract with or hire," indicate no intention to restrict the benefit of the statute to agisters for a money consideration. Moreover, the word "price" does not invariably refer to money, but may mean reward or compensation generally. In *Hudson Iron Co. v. Alger*, 54 N. Y., 173, the court said: "It is said further, that the words 'price' and 'vendee' used in the statute imply a sale for money. It is true that 'price' generally means the sum of money which an article is sold for; but this is simply because property is generally sold for money, not because the word has necessarily such a restricted meaning. * * * The Latin word from which price is derived, sometimes means 'reward,' 'value,' 'estimation,' 'equivalent,' and Webster shows that it is sometimes used in the same sense; and I can not doubt that it was used in this statute in the sense of 'value' or 'compensation.' There is just as much reason for applying the rule of the statute to this case as to one where the sale was for a money price; and it is right to assume that congress meant to apply the rule to every case wholly within the reason of the rule, unless the language used clearly forbids it." In an English statute the word "price" received a like construction in a connection very like that here in question. *London & Yorkshire Bank v. Belton*, 15 Q. B. Div. [Eng.], 457. It is no reason for denying the protection of the statute to this contract, that the compensation was to be made out of the wool and the increase of the flock, and not in money.

Error in the rulings upon evidence is assigned, in that the court excluded all evidence with reference to the arbitration clause in the contract and a demand by the plaintiffs for arbitration, and also rejected an offer to prove tender of the compensation due under the contract prior to suit. These rulings were correct. Whatever distinction may be made elsewhere between arbitration generally and arbitration as to damages only, it is well settled in this state that a provision in a contract requiring arbitration,

whether of all disputes arising under the contract, or only of the amount of loss or damage sustained by the parties thereto, will not be enforced, and that refusal to arbitrate is not available to the parties in an action growing out of the contract. *National Masonic Accident Ass'n v. Burr,* 44 Nebr., 256, 268. The alleged tender, which was in writing, was not an absolute and unconditional offer, and hence was ineffectual and rightly excluded. *Te Poel v. Shutt,* 57 Nebr., 592.

Other assignments relate to the admission of testimony with respect to statements and representations made to the defendant prior to the contract with reference to the kind and condition of the sheep that were to be delivered. This testimony appears to have been immaterial, and without correction by the trial court might have been prejudicial. But the court clearly and explicitly withdrew this testimony from the jury in the charge, and directed them not to consider any conversations or statements made prior to the contract, but to be governed solely by its terms. The advisability of admitting immaterial and possibly prejudicial matter and afterwards withdrawing it by instruction is open to grave doubt; but in the case at bar it was necessary to go into the kind, quality and condition of the sheep before they were taken by the defendant, since their condition at that time bore directly upon the causes of their condition at the time suit was brought, charged by plaintiffs to be due to improper care and handling by defendant. The immaterial testimony was so closely connected with and difficult to separate from testimony of the same witnesses going to material and important issues, that we think any error in its admission was cured by the instruction referred to. *American Fire Ins. Co. v. Landfare,* 56 Nebr., 482; *Darner v. Daggett,* 55 Nebr., 198. Complaint is also made that the court permitted one of the plaintiffs to be cross-examined as to losses in other flocks taken from the same original lot of sheep as those delivered to the defendant under his contract. The witness had given testimony tending to show that a large number

of the sheep were lost and that such losses were due to improper handling by defendant. His testimony was largely in the nature of expert opinion, as to which a considerable latitude upon cross-examination is always allowable. Whatever tended naturally to show the improbability of his conclusions or to throw doubt upon his statements in the examination-in-chief was admissible; and the fact that losses had occurred also in other flocks taken from the same original lot might tend to show that the original condition of the animals, which was a matter of dispute, was chargeable with all or a portion of the loss. The rejection of evidence tending to show that defendant mortgaged the sheep is the basis of another assignment of error. But the facts as to such mortgage were afterwards fully proved in another way, so that the error, if any, was without prejudice. *Missouri P. R. Co. v. Fox*, 60 Nebr., 531. Two further alleged errors in rulings on evidence remain to be considered. The rejection of evidence as to losses among the sheep replevied after they were taken under the writ was proper, because no offer was made to prove any connection between such subsequent losses and the defendant's care or want of care while he had possession. A large number of separate letters were offered and excluded, and the rulings on all of them are assigned as one error; several being palpably irrelevant, no question for review is raised as to the others.

The charge of the court, so far as it relates to the damages recoverable, has been considered already. Apart from its failure to define accurately what is meant by damages for detention, it is not open to criticism, and sufficiently covered the points raised in the instructions tendered by plaintiffs. The most serious of the errors assigned as to the instructions is that they do not make any distinction between the sheep delivered under the original contract and those subsequently delivered under distinct agreements of a different character. But the instructions requested by the plaintiffs are open to the same objection. No point seems to have been made in the instructions

offered as to the difference in the contracts under which the sheep were taken at various times, and hence the court committed no error in framing his instructions upon the same theory as that adopted by counsel in their requests. *American Fire Ins. Co. v. Landfare,* 56 Nebr., 482; *Missouri P. R. Co. v. Fox,* 60 Nebr., 531.

Misconduct of the jury is also charged, but review of the evidence satisfies us that the finding of the trial judge to the contrary was correct.

Apart from the assessment of excessive damages for detention, we find no prejudicial error.    It is therefore recommended that in case the defendant, within thirty days from the filing hereof, remit all damages awarded him for detention of the property in controversy in excess of lawful interest upon the value of his interest from the date of the taking, the judgment be affirmed; otherwise, to be reversed and the cause remanded for a new trial.

SEDGWICK and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion it is hereby ordered that if the defendant, within thirty days from the filing hereof, remit all damages awarded him for detention of the property in controversy in excess of lawful interest upon the value of his interest from the date of the taking, the judgment be affirmed; otherwise, to be reversed and the cause remanded for a new trial.

JUDGMENT ACCORDINGLY.

NOTE.—Agister, agistor or, perhaps more properly, agistator, was the ancient official title of the guardian of the cattle pastured for a stipulated sum in the king's forest.  He collected the money paid for them.  Encyclopædic Dictionary.  In the absence of any statute upon the subject, an agister's lien exists only in the absence of credit extended by the surrender of physical possession.  *Grinnell v. Cook,* 3 Hill [N. Y.], 485, 492, 493, and authorities therein cited.— REPORTER.